**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMELIA ALEXANDER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 23-cv-00406-SH |
| TWO OAKS INVESTMENTS, LLC d.b.a. CONSOLIDATED BENEFITS RESOURCES (CBR) INC.; THE KEY GROUP, INC. d.b.a. KEY PERSONNEL DS; and DOES 1-25, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the partial motion to dismiss of Defendant The Key Group, Inc. ("Key Group").[1] Key Group moves to dismiss (1) Plaintiff's claims under the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §§ 2000gg–2000gg-6; (2) Plaintiff's claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213; and (3) Plaintiff's "disability-related claims" under the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, §§ 1101–1706.

Plaintiff agrees to the removal of her PWFA claims, as "the PWFA was enacted after the incidents at issue occurred." (ECF No. 45 at 2.[2]) Key Group's motion will also be granted as to the ADA and disability-related OADA claims, because Plaintiff has failed to exhaust her administrative remedies.

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 32 at 5.)

[2] References to page numbers refer to the ECF header.

1

**Factual Background**

Plaintiff Amelia Alexander ("Alexander") asserts claims against Key Group and Defendant Consolidated Benefits Resources, Inc. ("CBR"). The Court derives the following factual allegations from the amended complaint (ECF No. 33) and assumes they are true for purposes of this motion. As noted below (section I, *infra*), the Court also considers the charge of discrimination filed by Alexander with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 40-1).

 In May 2021, CBR hired Alexander through Key Group, a temporary agency, to be a receptionist. (*Id.* ¶¶ 18–19.) While at CBR, Alexander worked an average of at least 35 hours a week on tasks such as "data entry, mail sorting, sending out mail and checks, [and] managing email systems." (*Id.* at 2.) Alexander always performed the essential functions of her job and received no write-ups, negative performance evaluations, or criticism. (*Id.* at 2 & ¶ 30.)

From the beginning of the hiring process, both Key Group and CBR were on notice that Alexander "was carrying a high-risk pregnancy." (*Id.* at 2.) Alexander "needed time off on some days due to medical pre-natal care, and issues related to her high-risk pregnancy." (*Id.*) Alexander generally provided reasonable notice when she had appointments, and CBR gave her time off for "appointments ranging anywhere from 50 minutes [to] 2½ hours once a week." (*Id.* at 2–3.)

While Alexander was at CBR, her co-worker, Trena Jones ("Jones"), treated "women in the office who were pregnant outside of wedlock differently with harassing behavior, inappropriate comments, and lack of concern for their need to maternity and medical accommodation, to impose her conservative, religious values against" them. (*Id.* ¶ 30.) "At least one other woman faced similar discrimination by Trena Jones for being

pregnant and unmarried, which ultimately led [to] that woman being separated from that department." (*Id.* ¶ 33.)

During the week of August 16, 2021, Alexander told Key Group and CBR she needed "information on scheduling maternity and medical leave." (*Id.* ¶ 41.) Key Group told Alexander it would not be providing her with leave. (*Id.* ¶ 42.) At CBR, Jones told Alexander to reach out to human resources ("HR"), but they were unresponsive. (*Id.* ¶ 43.)

On August 25, 2021, Alexander left work early for emergency fetal monitoring. (*Id.* ¶ 24.) Jones "continued to make disapproving comments" to Alexander and "showed little sympathy" for her medical condition. (*Id.* ¶ 25.) At or near that same day, Alexander "reached out regarding her needs for accommodation as she got closer to labor" and "followed up with Key [Group] regarding medical leave again." (*Id.* ¶¶ 36, 44.) Key Group told Alexander to reach out to her supervisor at CBR, but Alexander received no response from CBR when she did so. (*Id.* ¶ 44.)

That week, Alexander also reported Jones' conduct to the Supervisor of Adjustors, Heather Carr ("Carr"). (*Id.* ¶ 26.) Alexander told Carr she had not previously reported Jones' behavior "due to the possibility of retaliation." (*Id.* ¶¶ 27, 46.) As far as Alexander is aware, Carr ignored her concerns and did not report Jones' behavior to HR. (*Id.* ¶¶ 28, 46.) Alexander also raised similar concerns to a Key Group employee, who ignored or denied her claims without explanation. (*Id.* ¶ 37; *see also id.* ¶ 19 (alleging Bailey Miller worked for Key Group).)

On August 31, 2021, Alexander was off work after exposure to COVID-19. (*Id.* ¶¶ 47–48.) Alexander told Jones that she had been exposed and needed to quarantine until she could confirm she had not contracted the virus. (*Id.* ¶ 50.) Alexander then tested

3

negative for COVID, but her doctor said she needed to test again due to her symptoms. (*Id.* ¶ 51.) Alexander told Jones about her doctor's advice. (*Id.*) That same day, Key Group informed Alexander she was being let go, and CBR terminated her employment. (*Id.* ¶¶ 20, 29, 47, 54.) Defendants said "attendance issues" were the reason for her termination. (*Id.* at ¶ 55.) Alexander only had two unplanned absences during her time with CBR—one being when she "had to miss work for emergency" fetal monitoring and the other being the "day following her COVID-19 exposure." (*Id.* ¶ 56.)

Alexander filed a charge of employment discrimination against Key Group with the EEOC on May 10, 2022. (*Id.* ¶ 15; ECF No. 40-1.) The form had a box for "DISCRIMINATION BASED ON," in which Alexander selected: "Sex." (ECF No. 40-1 at 1.) When asked what "THE PARTICULARS ARE" of her claim, Alexander restated many of the facts above and concluded,

> I believe I was terminated because of my pregnancy, as all of my appointments were approved. Outside of my approved appointments I had notified Ms. Trena [Jones] and when I would need to miss work which was during the week I was discharged as I was being tested for covid and also the week prior when I had left work for emergency fetal monitoring all of which I was told was okay. . . . I believe that I have been discriminated against because of my sex, Female, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.* at 1–2.) Alexander received her right to sue letter on June 20, 2023. (ECF No. 33 ¶ 16.)

**Procedural Background**

Alexander brought the current lawsuit on September 18, 2023. (ECF No. 2.) She described her claims as pregnancy, gender, and religious discrimination; retaliation for reporting gender discrimination and harassment; breach of duty to investigate and prevent gender discrimination and retaliation; and wrongful termination. (ECF No. 2 at 1 &

4

¶¶ 15–53.) Alexander alleged three "causes of action"—(1) employment discrimination "based on pregnancy, sex, gender, disability, and religious beliefs" in violation of the OADA and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; (2) retaliation for participation in protected activities in violation of Title VII and the OADA; and (3) "wrongful termination in violation of public policies" under the OADA. (*Id.* ¶¶ 54–88.) Both CBR and Key Group filed answers to the original complaint. (ECF Nos. 11, 22.)

Alexander then amended her complaint. (ECF No. 33.) In the amended complaint, Alexander largely restates the factual allegations undergirding her three original "causes of action." (*Id.* at 2–18.) However, Alexander now alleges that (1) the employment discrimination violated the PWFA; and (2) the retaliation violated the PWFA. (*Id.* at 12 & ¶ 62; *id.* at 15 & ¶ 81.) Further, Alexander has added a fourth "cause of action" for disability discrimination and failure to accommodate under the ADA and OADA. (*Id.* ¶¶ 97–106.)

Key Group moves to dismiss the PWFA claims and the entirety of the fourth "cause of action." (ECF No. 40 at 1.) Key Group argues Alexander (1) cannot bring claims under the PWFA—as the allegedly wrongful conduct occurred before its enactment; (2) has failed to exhaust her administrative remedies with respect to the ADA and disability-related OADA claims; (3) has failed to bring her ADA and disability-related OADA claims in a timely manner; and (4) has failed to plead plausible facts to support her ADA and disability-related OADA claims. (*Id.* at 5–13.) The Court finds Key Group is entitled to dismissal on the first two grounds and does not reach its other arguments.

**Analysis**

I. **Standard of Review**

Most of Key Group's arguments fall under Fed. R. Civ. P. 12(b)(6), as they assert Alexander has failed to state a claim upon which relief can be granted. (*See* ECF No. 40 at 5–11.) *See also Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (overruling prior Tenth Circuit precedent and holding that failure to exhaust does not deprive the court of jurisdiction over a claim).

However, Key Group's arguments as to the OADA go to jurisdiction and are properly heard under Fed. R. Civ. P. 12(b)(1). *See* Okla. Stat. tit. 25, § 1350(B) (requiring the filing of a timely charge before an employee may "have standing in a court of law to allege discrimination"); *see also Johnson v. Spirit Aerosys., Inc.*, No. 20-CV-00138-GKF-CDL, 2021 WL 6066701, at *6 (N.D. Okla. Mar. 26, 2021) (noting the long-established doctrine in Oklahoma that exhaustion is a jurisdictional prerequisite); *Moler v. Enbridge Emp. Servs., Inc.*, No. CIV-20-00515-PRW, 2022 WL 331014, at *3 (W.D. Okla. Feb. 3, 2022) ("By statutory amendments in 2011, the Oklahoma Legislature unequivocally imposed an administrative filing requirement in jurisdictional terms").

A. **Rule 12(b)(6)**

A 12(b)(6) motion argues that a plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted). A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions" or a "formulaic recitation" of the elements. *Id.* at 555.

When assessing the allegations in a complaint, the Court looks not only to the complaint itself; it may also "consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice*, 861 F.3d at 1103 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Here, the Court considers Plaintiff's EEOC charge of discrimination (ECF No. 40-1) in ruling on Key Group's motion. Plaintiff references the charge in her amended complaint (ECF No. 33 at 5); it is central to her claim (*see* section III(B), *infra*); and no party disputes its authenticity. *See also Mobley v. Dillon Cos.*, 153 F.3d 727 (table), 1998 WL 314589, at *1 (10th Cir. May 29, 1998) (unpublished) (finding court properly considered EEOC charge in ruling on 12(b)(6) motion).[3]

The Court does not, however, consider the additional documents attached to Plaintiff's response, which appear to be statements of position and responses submitted to the EEOC by Alexander, Key Group, and CBR. (ECF Nos. 45-1–45-4.) The Tenth Circuit has "consistently held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the Charge itself, rather than

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

7

the Charge and any responsive documents." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1165 (10th Cir. 2018). As a result, the court has rejected the argument that facts raised in a response to a position statement can put the defendant "on notice" of a theory later alleged in the complaint. *Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) ("to determine the claim before the EEOC, one looks only to the Charge itself").

### B. Rule 12(b)(1)

A Rule 12(b)(1) motion typically takes one of two forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). In a facial attack, the Court accepts the allegations in the complaint as true, *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and applies the same standards as are applicable to a Rule 12(b)(6) motion, *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). In a factual attack, the Court does not presume the allegations are true but, instead, has wide discretion to consider other evidence. *Rodriquez-Aguirre*, 264 F.3d at 1203.

Key Group characterizes its motion as a factual attack. (ECF No. 40 at 12 n.3.) However, the only document Key Group asks the Court to consider is the charge of discrimination. (ECF No. 40-1.) As noted above, this document is properly considered as part of the allegations of the complaint under Rule 12(b)(6), which means it is also properly considered as part of a facial attack under Rule 12(b)(1). *Muscogee (Creek) Nation*, 611 F.3d at 1227 n.1. The Court, therefore, construes Key Group's motion as a

facial attack. *See Moreno v. Kan. City Steak Co.*, No. 17-CV-02029-DDC-KGS, 2017 WL 2985748, at *5 (D. Kan. July 13, 2017) (finding jurisdictional challenge based on document attached to complaint to be "facial attack"); *see also Glenwood Springs Citizens' All. v. U.S. Dep't of the Interior*, 639 F. Supp. 3d 1168, 1176 n.6 (D. Colo. 2022) (noting, even when construing 12(b)(1) motion as facial attack, the court may consider documents attached to or referenced in the complaint); *Am. Nat'l Prop. & Cas. Co. v. Whisenant*, No. CV 19-1024 KG/KK, 2020 WL 5366810, at *4 (D.N.M. Sept. 8, 2020) (noting consideration of documents attached to or referenced in a complaint generally does not convert a facial attack into a factual one).

## II.    Plaintiff's Claims under the PWFA

Plaintiff concedes that dismissal of her PWFA claims is appropriate (ECF No. 45 at 2), and the Court agrees. Plaintiff was terminated from her employment on August 31, 2021. (*E.g.*, ECF No. 33 ¶ 29.) The PWFA was enacted on December 29, 2022, and explicitly stated that it would take effect 180 days <u>after</u> its enactment. Consolidated Appropriations Act, Pub. L. 117-328, div. II, § 109, 136 Stat. 4459, 6089 (2022); *see also Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (noting the presumption against retroactive legislation). Plaintiff's PWFA claims will be dismissed.

## III.   Plaintiff's Claims under the ADA and OADA (Disability)

### A.    Key Group Did Not Waive Its Dismissal Arguments

Plaintiff argues Key Group cannot file a motion to dismiss her amended complaint because it answered her original complaint. (ECF No. 45 at 8.) Plaintiff is wrong.

Rule 12 allows a party to file a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim so long as the motion is "made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Here, Plaintiff filed her amended

9

complaint on February 20, 2024 (ECF No. 33), superseding and rendering her original complaint without legal effect. *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007). Once a party is allowed to amend its pleadings, "the opposing party's right to interpose a Rule 12(b) motion is extended or revived accordingly." 5C Benjamin Spencer, Fed. Prac. & Proc. (Wright & Miller) § 1361 (3d ed.). In any event, neither failure to state a claim nor subject-matter jurisdiction is waived by failing to include it in a responsive pleading or Rule 12(b) motion. *See* Fed. R. Civ. P. 12(g) & (h); *see also City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017) (noting subject-matter jurisdiction cannot be waived and may be raised at any time prior to judgment).

Plaintiff's citation to *Lincoln* for her argument is misplaced. *Lincoln* stands for the proposition that "a plaintiff's failure to file an EEOC charge . . . merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." 900 F.3d at 1185; *see also Gad v. Kan. State Univ.*, 787 F.3d 1032, 1041 (10th Cir. 2015) (noting certain Title VII exhaustion requirements are conditions precedent for which the plaintiff has a burden and are not, therefore, affirmative defenses "in the classical sense"). *Lincoln* also remanded for the district court to consider whether to enforce a defendant's stipulation that exhaustion had occurred. *Lincoln*, 900 F.3d at 1186-88. *Lincoln* does nothing to bar a defendant from raising affirmative defenses or conditions precedent in a timely Rule 12(b) motion.[4]

The Court, therefore, turns to the merits of Key Group's exhaustion arguments.

---

[4] In any event, Key Group pled failure to exhaust administrative remedies and lack of subject-matter jurisdiction in response to Alexander's original complaint. (ECF No. 11 at 11.)

### B. Exhaustion of ADA and OADA Claims

Generally, "Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII . . . when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002); *see also* 42 U.S.C. § 12117(a). Under Title VII, a plaintiff normally may not bring an action based upon claims that were not part of a timely filed EEOC charge for which she has received a right-to-sue letter. *Lincoln*, 900 F.3d at 1181. The same requirement is found in the ADA. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) ("Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit"), *overruled on other grounds by Lincoln*, 900 F.3d at 1185–86. The same requirement is also found in the OADA.[5] *See Bergner v. Oklahoma*, No. 21-CV-00232-GKF-CDL, 2022 WL 22246885, at *3 (N.D. Okla. Feb. 10, 2022) ("[t]he OADA includes an administrative exhaustion requirement" (citing Okla. Stat. tit. 25, § 1350(B))); *see also Womack v. Mercy Hosp. Okla. City, Inc.*, No. CIV-19-683-R, 2020 WL 3513245, at *2 n.2 (W.D. Okla. June 29, 2020) (noting claims alleging violations of Title I of the ADA and the OADA "are subject to the same EEOC pre-suit requirements as claims alleging violations of Title VII.")).

As the Tenth Circuit has summarized:

> The exhaustion rule derives from two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim . . . . To advance these purposes, . . . [the] plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC. While we liberally construe the plaintiff's allegations in the EEOC charge, the charge must contain facts

---

[5] While exhaustion under the OADA is jurisdictional, this distinction is immaterial unless the defendant has waived or forfeited the non-jurisdictional defense. *Smith*, 904 F.3d at 1164.

concerning the discriminatory and retaliatory actions underlying each claim. The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge.

*Smith*, 904 F.3d at 1164–65 (cleaned up). To determine the scope of an EEOC charge, the Court first looks to the label an employee gave her claim. "The failure to mark a particular box [alleging discrimination] creates a presumption that the charging party is not asserting claims represented by that box," but the presumption may be rebutted "if the text of the charge clearly sets forth the basis of the claim." *Jones*, 502 F.3d at 1186.

### C. Plaintiff Failed to Exhaust Administrative Remedies for Her ADA and Disability-Related OADA Claims

As noted above, Alexander marked only "Sex" in the box stating the basis of her discrimination claim. (ECF No. 40-1 at 1.) As such, the undersigned will presume she only asserted claims of discrimination on the basis of sex unless the text of her charge clearly sets forth another basis. *Jones*, 502 F.3d at 1186. Upon review, the Court finds the particulars of Plaintiff's charge do not rebut this presumption.

#### 1. Disability Discrimination under the ADA and OADA

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual[6] on the basis of disability" in the hiring or employment process. 42 U.S.C. § 12112(a); *see also* Okla. Stat. tit. 25, § 1302(A)(1) (including disability as a basis for a discriminatory employment practice). A "disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."

---

[6] A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

42 U.S.C. § 12102(1); *see also* Okla. Stat. tit. 25, § 1301(4) (defining "individual with a disability"). A "major life activity" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). It may also encompass "the operation of a major bodily function, including . . . functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

In order to demonstrate that an employer has discriminated based on disability, "an employee must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 795 (10th Cir. 2020) (internal quotations omitted).

### 2. Pregnancy-Related Disability

Here, Plaintiff appears to assert disability-related claims based on the existence of her high-risk pregnancy. As Plaintiff acknowledges (ECF No. 45 at 4), pregnancy alone is not a disability under the ADA. *See, e.g.*, *Ortiz v. Bank of Lab.*, No. 21-2316-JAR-KGG, 2022 WL 2072722, at *6 & n.29 (D. Kan. June 9, 2022) (collecting cases), *aff'd*, No. 22-3127, 2023 WL 3590699 (10th Cir. May 23, 2023). Instead, the EEOC would look to whether there was a pregnancy-related impairment that substantially limits a major life

13

activity.[7] *See* Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app. ("Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments. However, a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition.").

### 3. Plaintiff's Charge Does Not Include Disability

The text of Plaintiff's charge of discrimination does not set forth any basis for a disability-related claim (much less does it do so "clearly"). The most detail Plaintiff gives about her pregnancy is classifying it as "high risk" and noting that she had "appointments" that were "pre-approved." (ECF No. 40-1 at 1.) She also notes that she once missed work due to "emergency fetal monitoring," which she "was told was ok." (*Id.* at 2.) Other than Jones' comments about "being pregnant and not married," nothing else pregnancy-related is mentioned.

Even liberally construed, Plaintiff's EEOC charge contains no facts indicating she suffered from a pregnancy-related impairment that limited a major life activity. *Cf. Heatherly v. Portillo's Hot Dogs, Inc.*, 958 F. Supp. 2d 913, 920-21 (N.D. Ill. 2013) (finding triable issue of fact where plaintiff was unable to work more than 6-8 hours or lift heavy objects due to her high-risk pregnancy). The EEOC would not be reasonably expected to investigate disability-related discrimination on the basis of Plaintiff's charge. Thus, Plaintiff has failed to exhaust administrative remedies as to the ADA or disability-

---

[7] Examples given by the EEOC include "a diagnosis of cervical insufficiency" that requires bed rest, or other impairments (like anemia, sciatica, nausea, abnormal heart rhythms, swelling, or depression) that may "result in pregnancy-related limitations." Enforcement Guidance on Pregnancy Discrimination and Related Issues, § II(A), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#IIA (last visited Aug. 9, 2024).

related claims under the OADA, and such claims will be dismissed. Because the time for Plaintiff to file a charge under the ADA and OADA has long-since passed,[8] this dismissal will be with prejudice.

IT IS THEREFORE ORDERED that *Defendant The Key Group, Inc.'s Partial Motion to Dismiss Certain of Plaintiff's Claims* (ECF No. 40) is GRANTED. Plaintiff's PWFA claims, ADA claims, and disability-related OADA claims against Defendant The Key Group, Inc. d.b.a. Key Personnel DS, are hereby DISMISSED WITH PREJUDICE.

ORDERED this 9th day of August, 2024.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[8] *See* 42 U.S.C. § 12117(a) (noting the procedures set forth in § 2000e-5 apply to persons alleging discrimination on the basis of disability); *Id.* § 2000e-5(e)(1) (a charge must be filed within 180 or 300 days after the allegedly unlawful employment practice occurred, depending on whether the proceedings are initially instituted with a State or local agency); *see also* Okla. Stat. tit. 25, § 1350(B) (requiring a charge be filed within 180 days from the last date of alleged discrimination).